# In the United States Court of Federal Claims

No. 03-2673 C
(Filed: April 1, 2004)

| | | |
|---|---|---|
| **ALLIED OIL & SUPPLY, INC.** Plaintiff, v. **THE UNITED STATES,** Defendant. | * | Motion to quash; third party; notice; noticee; interest; RCFC 14(b); Contract Settlement Act of 1944; 41 U.S.C. § 114(b). |

*Brian D. Nolan*, Omaha, NE, counsel of record for plaintiff.

*Matthew P. Reed*, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, DC, counsel of record for defendant.

*Alan Strasser*, Washington, DC, counsel for third-party noticee Warren Distribution, Inc.

## ORDER and OPINION

On January 22, 2004, Warren Distribution, Inc. (hereinafter "Warren") filed its Motion to Quash the Notice to Third Party (hereinafter "Warren's Mot."). For the reasons given below, Warren's motion to quash is DENIED.

### I. *Background*

In August 1998, the United States Army Corp of Engineers, acting on behalf of the United States (hereinafter "Defendant"), entered into a contract with Allied Oil & Supply, Inc. (hereinafter "Plaintiff" or "Allied") for the supply and delivery of lubricating oil. Brief in Support of Warren Distribution, Inc.'s Mot. to Quash the Notice to Third Party (hereinafter "Warren's Br.") at 1. Allied then subcontracted with Warren to supply the oil for that contract. *Id*. After a disagreement between Allied and the government over the quality of the lubricating oil, the contracting officer (hereinafter "CO") found Allied responsible, but not Warren. *Id*. at 1-2. Allied then filed the current action on November 17, 2003, seeking

review of the CO's decision. At the same time, Allied filed a Motion for Notice to Third Party (hereinafter "Pl.'s Mot.") under Rule 14(b) of the Rules of the United States Court of Federal Claims (hereinafter "RCFC").[1] The Court granted Plaintiff's motion on December 2, 2003.

After receiving notice on December 11, 2003, Warren filed its motion to quash, alleging that notice was improper. *See* Warren's Mot. at 1. Plaintiff responded to Warren's motion on February 5, 2004, and Warren replied on February 19.

In its motion, Warren asserts that the Rule 14(b) notice should be quashed, arguing that the notice is based on claims between private parties and that it exceeds the power of the Court of Federal Claims (CFC). Warren's Mot. at 1. Warren also claims that it does not have a sufficient interest in the subject matter of this action. Warren's Reply to Allied Oil & Supply, Inc.'s Opp'n to Warren Distribution, Inc.'s Motion to Quash the Notice to Third Party (hereinafter "Warren's Reply") at 2-5. Warren bases these arguments mainly on the reasoning in *RSH Constructors, Inc. v. United States*, 20 Cl. Ct. 1 (1990), a case decided by the United States Claims Court (hereinafter "Claims Court").[2] In that case, the court granted a motion to quash notice to four third parties, one of whom was the plaintiff's subcontractor, just as Warren is Allied's subcontractor. 20 Cl. Ct. at 3, 8; *see* Warren's Br. at 3-6, 8; Warren's Reply at 2-4.

## II. *Analysis*

Warren relies heavily on *RSH*, which is not binding on this Court, to support its contention that notice in this case was improper. Warren's Br. at 3-6, 8; Warren's Reply at 2-4; *see also Tech. for Communications Int'l v. United States*, 22 Cl. Ct. 711, 713 (1991) (stating that "the decision of a Claims Court judge is not binding precedent"). Although the Court agrees that the posture and facts of *RSH* are similar to those in the case at bar, the Court does not agree with Warren that *RSH* applies here. Instead, the Court holds that: (1) Warren has an interest in the subject matter of this action; (2) it is immaterial whether this Court has jurisdiction over Warren; and (3) despite the notice issued by the Clerk, Warren will not be bound by the Court's decision in this case.

---

[1] The relevant portion of 14(b) is 14(b)(1):

> The court, on its own motion or on the motion of a party, may notify any person with legal capacity to sue and be sued and who is alleged to have an interest in the subject matter of any pending action. Such notice shall advise of the pendency of the action and of the opportunity to seek intervention and to assert an interest in the action.

[2] The United States Claims Court was the predecessor to the Court of Federal Claims.

**A. Warren has an "interest" in the subject matter of this action.**

One of Warren's arguments is that it does not have an interest in the subject matter of this claim "as contemplated by R.14." Warren's Reply at 5. However, the Court believes that Warren does have such an interest. Under RCFC 14(b)(1), the requirement is that a noticee "is *alleged* to have an interest in the subject matter" of this action (emphasis added). Before 1992, however, the rules governing notice stated that a noticee must be one who "*appears* to have an interest" in said subject matter (emphasis added). Regardless of this semantic difference, the Court of Federal Claims and its predecessor the Claims Court have consistently interpreted the words "alleged" and "appears" as synonymous.[3] *See Bird v. United States*, 51 Fed. Cl. 536, 541 n.6 (2002) (stating that the change in language "has had no material effect on the interpretation of the rule");[4] *see also USA Petrochem Corp. v. United States*, 4 Cl. Ct. 345, 347 n.* (1984).

Further, at least one Claims Court case has interpreted Court of Claims[5] precedent to mean that an apparent interest is sufficient for notice to issue, "[e]ven in those situations where an alleged third party interest in the suit is uncertain." *Del-Rio Drilling Programs, Inc. v. United States*, 17 Cl. Ct. 844, 849 (1989) (*citing Philadelphia Suburban Corp. v. United States*, 211 Ct. Cl. 354, 355-56 (1976); *Carrier Corp. v. United States*, 534 F.2d 250, 251-52 (Ct. Cl. 1976)). This Court agrees with *Del Rio*, as the two binding cases it cites support its interpretation of the interest requirement. For example, the *Carrier* court said that notice can issue "whenever the indemnity allegations *seem nonfrivolous*." 534 F.2d at 252 (emphasis added). In addition, *Philadelphia Suburban* cited *Carrier* when denying a motion to quash notice to a noticee against whom a party "alleged a non-frivolous claim." *Philadelphia Suburban*, 211 Ct. Cl. at 356. Thus, if the Court finds any alleged interest in the present case, it must deny Warren's motion. *See Myrtle Beach Pipeline Co. v. United States*, 6 Cl. Ct 363, 365 (1984) (citations omitted).

---

[3] Although the substance of RCFC 14(b) has not changed much over time, its location has. Previous versions of the rule can be found in the Rules of the United States Court of Claims at Rule 19(a) (1951 to 1964), Rule 23 (1964 to 1969), and Rule 41(a) (1969 to 1982); Rules of the United States Claims Court 14(a)(1) (1982 until 1992); and RCFC 14(a)(1) (1992 until 2002). All versions of this rule claim to implement Section 114(b) of the Contract Settlement Act of 1944, 41 U.S.C. § 114(b). For ease of reading, when the Court refers to any version of the rule in this opinion, it will use one of the current designations (*e.g.*, "Rule 14," "RCFC 14(b)(1)").

[4] Therefore, throughout this opinion, "appears to have an interest" will be regarded as having the same meaning as "is alleged to have an interest."

[5] Decisions of the Court of Claims, which formerly held the Federal Circuit's jurisdiction, are considered binding precedent on this Court. *See South Corp. v. United States*, 690 F.2d 1368, 1369 (Fed Cir. 1982) (en banc).

1. *The Rule 14(b)(1) interest requirement is applied in the same manner to a noticee of a private party as it is to a noticee of the government.*

Warren asserts that precedential case law has interpreted the "interest" requirement more broadly where the United States, instead of a private plaintiff, files a motion to notice a third party. Warren's Br. at 4 n.1; *see also* Warren's Reply at 3-4. In support of its contention, Warren cites a statement from *Philadelphia Suburban*: "A person against whom the United States alleges a non-frivolous claim for indemnity is a party who *'appears'* to have such an interest." 211 Ct. Cl. at 356 (emphasis in original); *see also* Warren's Br. at 4 n.1. However, the Court disagrees with Warren's interpretation of *Philadelphia Suburban*, a case in which a noticee's motion to quash notice was denied because the noticee had participated in the act on which the case was based. Since the noticee's actions "might have resulted in a contract between [it] and [the plaintiff], the court found that the 14(b) interest requirement was satisfied." 211 Ct. Cl. at 355. Although Warren is correct that *Philadelphia Suburban* denied a motion to quash after the government had moved for notice, the case gives no support for Warren's assertion that the Court of Claims intended for private plaintiffs to have a higher burden than the government when moving for notice. Instead, a logical reading of the case suggests that the court was merely citing one example of a situation that met the interest requirement, not articulating one standard for private plaintiffs and another for the government. *See id*.

Further, the specific passage Warren quoted, which states that "[a] person against whom the United States alleges a non-frivolous claim for indemnity is *a* party who *'appears'* to have such an interest," also does not suggest two different standards. *Id*. In fact, the use of the non-specific article "a," rather than the specific article "the" hints at the possibility that, in other situations, notice can issue based on noticees' other interests. *Id*. (first emphasis added). Also, at least two Claims Court cases have found sufficient interest where a private plaintiff has moved for notice, without making a distinction between the "interest" that a private party, versus the government, must allege. *See USA Petrochem*, 4 Cl. Ct. at 346-47 (granting the *plaintiff's* motion for notice, where the noticee's interest came from supplying the oil that plaintiff was accused of not delivering to the government); *see also Effingham County Bd. of Educ. v. United States*, 7 Cl. Ct. 34, 36-38 (1984) (finding that the *plaintiffs'* noticee had an interest because the noticee would have a monetary obligation if the plaintiffs' lost their action in the Claims Court).

In addition, Rule 14 gives no indication that the interest standard is applied differently to noticees of private plaintiffs, as opposed to those of the government. The Rule makes no reference to such a double standard, and in fact says that *either* party may move for issuance of a notice to a nonparty. A reasonable interpretation, therefore, would counsel against a double standard because, if private plaintiffs could not notice third parties who could potentially indemnify them, there would be no rationale for allowing plaintiffs to move for notice at all.

Warren also argues that *Myrtle Beach*, a case that denied a third party's motion to quash notice, supports its argument that noticees of the government are held to a different

interest standard than those of a private plaintiff. Warren's Mot. at 4 n.1. However, nothing in that case supports such a reading. Instead, *Myrtle Beach* says, "The key factor in use of the notice provision in [Rule 14(b)] is that the third-party to whom the notice is directed 'appear [sic] to have an interest' in the proceedings." 6 Cl. Ct. at 365 (citation omitted). Further, the *Myrtle Beach* court did not say that another "key factor" was the identity of the party making the motion, and the court did not in any way imply that a distinction could be made between the type of interest required for the government's noticee and the type required for a plaintiff's. Therefore, Warren's argument that a private plaintiff's motion for notice should be treated differently than the government's motion for notice is without merit.

2. RSH *does not apply to the case at bar.*

Warren contends that *RSH* supports its assertion that it does not have sufficient interest to be noticed in this case. *See* Warren's Br. at 4. However, the Court disagrees, as there are problems with relying on *RSH* for authority. First, *RSH* is not binding precedent, since the motion at issue in *RSH* was decided by the Claims Court, a predecessor of this Court. *See Tech. for Communications Int'l*, 22 Cl. Ct. at 713. Second, Warren states that "[i]t is well established that a third-party notice should be quashed where 'the allegations of the third parties' interests are based entirely on various claims by plaintiff against these private parties.'" Warren's Br. at 3-4 (emphasis omitted) (quoting *RSH*, 20 Cl. Ct. at 4). However, Warren's brief cites no case law supporting that its position actually is "well established." Warren's Br. at 3-5.[6]

Finally, this Court's reading of binding precedent differs from that of the *RSH* court. For instance, *RSH* found that the plaintiff's subcontractor, supplier, architect, and manufacturer had no interest in the claim, "either apparent or otherwise," since these noticees had no claim against the government and the government had no claim against them. 20 Cl. Ct. at 7-8. However, in coming to this conclusion, the court relied on Court of Claims cases where private parties sought "*affirmative relief*," not just notice. *Id*. at 4*; see Rolls-Royce Ltd. v. United States*, 364 F.2d 415, 416 (Ct. Cl. 1966); *Peoples Apparel, Ltd. v. United States*, 650 F.2d 291, No. 4-80C, 1980 WL 99710, at *1-2 (Ct. Cl. Dec. 5, 1980) (unpublished table decision). For instance, in *Rolls-Royce*, the court refused to allow a

---

[6] Warren does cite to various agency decisions and one state court opinion in support of its *other* assertion, that "Warren's actions cannot be used as a defense to the Government's claim against Allied." Warren's Br. at 5. However, Warren bases this argument on the law involving the relationship between contractors and subcontractors. *Id*. As such, the argument is not for this Court to decide. *See Del-Rio*, 17 Cl. Ct at 849 (citations omitted) (stating that an apparent interest is sufficient for notice to issue, "[e]ven in those situations where an alleged third party interest in the suit is uncertain."); *see also Rockwell Int'l Corp. v. United States*, 31 Fed. Cl. 536, 540 (1994) (denying a motion to quash notice because "[the third party's] ultimate obligation . . . will not be determined in this proceeding."). Instead, the Court only needs to decide if Warren has been "alleged to have an interest," which it has. RCFC 14(b)(1); *see infra*, Part II.A.3.

counterclaim by a *third party intervenor* against the plaintiff because "affirmative relief by one private party against another [wa]s sought." 364 F.2d at 416. Likewise, in *Peoples Apparel*, the court refused to allow the plaintiff's claim against a *third party defendant* because the court did not have "jurisdiction to render a judgment for the plaintiff against such a party." 1980 WL 99710, at *2.

Neither *Rolls-Royce* nor *Peoples Apparel* is relevant to the Rule 14(b) interest requirement in the case at hand, or in *RSH*, because of two main distinctions. First, no private party in the case at bar or in *RSH* asserted any claim for affirmative relief against another private party, which is what happened in the other two cases. Second, in both *Rolls-Royce* and *Peoples Apparel*, an actual *claim* was being brought against someone who was *part of the action*, instead of here and in *RSH*, where the third party is only being *notified* and has a *choice* of whether to participate in the case. Therefore, neither *Rolls-Royce* nor *Peoples Apparel* supports the *RSH* court's interpretation of the Rule 14(b) interest requirement, because those cases were deciding a totally separate issue. As a result, the Court respectfully disagrees with *RSH* and declines to follow it.

3. *Warren's "interest" meets the "alleged interest" standard of RCFC 14(b)(1).*

As noted above, Warren has asserted that it does not have the kind of interest that is required for Rule 14(b) notice. Warren's Reply at 2-5. However, the Court concludes that Warren clearly does have an alleged interest in this case's subject matter: Allied hired Warren to produce the oil that was supplied to the government; Warren supplied that oil; and the government found that oil to be non-conforming. Br. in Support of Allied Oil & Supply, Inc.'s Opp'n to Warren Distribution, Inc.'s Mot. to Quash the Notice to Third Party (hereinafter "Pl.'s Br.") at 3. As a result, if the Court finds in favor of the government, Warren could be required to indemnify Allied.[7] Thus, Warren's interest would be considered, in the words of the enabling statute, a "possible interest." *See* 41 U.S.C. § 114(b). Furthermore, both binding and persuasive precedent have interpreted a "possible interest" to include one which is a "direct pecuniary interest" or a "potential pecuniary interest." *See Bowser v. United States*, 420 F.2d 1057, 1060 (Ct. Cl. 1970); *Bird,* 51 Fed. Cl. at 541-42.

Further, in *Myrtle Beach*, which is similar to the case at bar, the Court of Federal Claims found that the interest standard was met and notice was proper in an action by a pipeline owner against the United States. In that case, the plaintiff challenged the contracting officer's decision that it owed the Government for fuel that was not delivered. 6 Cl. Ct at 365. The plaintiff alleged that, instead, the fuel was not delivered because of faulty equipment supplied by the third-party pipeline manufacturer. *Id*. The court found that the

[7] However, this Court makes no comment on either the likelihood of such an outcome in this Court or the validity of such a claim against Warren.

pipeline manufacturer had a sufficient interest "in the question of whether the air eliminator it manufactured and sold to plaintiff for use in installation of the meter on plaintiff's pipeline was defective and thus responsible for the fuel loss which is the subject matter of the action between plaintiff and defendant." *Id*. The similarities between *Myrtle Beach* and the case at bar are striking: both involve a plaintiff who is challenging a CO's decision, and the plaintiff in both cases alleges that the supplier of the product may be responsible for the "loss which is the subject matter of the action between plaintiff and defendant." *Id*.; Pl.'s Br. at 1, 4. Therefore, this Court agrees with the sound reasoning in *Myrtle Beach* and finds that it applies to the case at bar.

Further, notice has been permitted in other cases with similar facts. For example, in *USA Petrochem*, the plaintiff sued the government in the Claims Court for review of a CO's decision, after the CO had found that the plaintiff was liable to the government for not supplying all of the oil required under their contract. 4 Cl. Ct. at 346. The plaintiff requested that notice be given to its suppliers on the basis that "if it is found liable . . ., then, in another suit, the third parties will be liable to plaintiff." *Id*. The Court agreed that notice was proper, finding that notice should issue to the third parties because the "[p]laintiff has alleged that the suppliers have an interest in th[e] action." *Id*. at 347. The court reasoned that "the suppliers should be given an opportunity, at their choosing and without compulsion, to appear and protect their interests." *Id*. Furthermore, there is binding case law that has also used this reasoning. *See Uram*, 216 Ct. Cl. at 420 (affirming trial court's denial of motion to quash, so that the noticee could have such an opportunity); *Philadelphia Suburban*, 211 Ct. Cl. at 355 (denying a motion to quash where noticee's actions "might have resulted in a contract between [it] and [the plaintiff]"); *Carrier*, 534 F.2d at 252 (finding that notice should issue to a non-party, even though the contract did not contain an indemnity provision, since the indemnity allegations "seem[ed] nonfrivolous").

In light of the preceding case law, it is obvious that Warren has an "alleged" interest in the subject matter of this claim. Specifically, if Plaintiff's action against the United States fails and it is required to pay the government for the nonconforming oil, Warren could be liable to Plaintiff. Therefore, this "potential pecuniary interest" makes notice appropriate, and the notice will not be quashed.

### B. It is immaterial whether this Court has jurisdiction.

Warren also makes the jurisdictional argument that the notice it received "exceeds the constitutional limits on the power of the United States Court of Federal Claims," saying that any claim that might be made against it would be solely between private parties. Warren's Br. at 6 (emphasis omitted); *see also id*. at 8. However, as noted above, this Court has found that notice to Warren does not result in a claim between private parties, because Plaintiff has not made a *claim* against Warren for *affirmative relief*. *See supra* Part II.A.2.

Furthermore, the court need not have jurisdiction over or be able to render a judgment against a noticee. *See Uram v. United States*, 216 Ct. Cl. 418, 420 (1978) ("[A] determination that a person should receive 'notice' . . . is not equivalent to a decision that this

Court . . . could render a judgment against that person.") (citations omitted). In fact, as the Court of Claims has said, the notice rule "requires no jurisdictional evaluation prior to the issuance of notice." *Id*. The reasoning behind this is that the court's third-party practice rules were designed in part to benefit noticees, so that notice is proper even when the noticee cannot be bound by the decision of this court. *Bird,* 51 Fed. Cl. at 542. Further guidance as to the distinction between jurisdiction and notice can be found in *Myrtle Beach*, a notice case in which the Claims Court said, "this court is without jurisdiction to litigate any disputes between [the noticee] and the plaintiff," but asserted that it was not adjudicating any such disputes by allowing a third party to be noticed:

> The court is adjudicating the rights of plaintiff and the government. In so adjudicating, the court recognizes that it will be forced to make some determinations concerning [the noticee] to render a decision for or against plaintiff or the government. The notice provision provides [the noticee] with the opportunity to be present when such determinations are made.

6 Cl. Ct. at 367 n.3. Therefore, whether the Court of Federal Claims can adjudicate a claim between Allied and Warren is irrelevant, because no jurisdiction is required for the issuance of notice. As a result, the Court finds that granting Plaintiff's motion to notice Warren does not exceed the constitutional limits of the Court of Federal Claims.

**C. Warren's Due Process rights will not be affected.**

Finally, Warren argues that the notice should be quashed because notice would improperly bind it, even if it chose not to appear in this action. Warren's Br. at 5-6. Once again, the Court cannot agree with Warren's position. Warren relies on *Martin v. Wilkes*, a case in which the Supreme Court held that a person could not be bound by a judgment in a litigation in which that person is not a party. 490 U.S. 755, 761 (1989); *see also* Warren's Br. at 5-6. The Supreme Court, however, also recognized some exceptions to its rule. *Id*. at 762. As a result, "[a] split has developed within the Court of Federal Claims as to whether *Martin* overruled Court of Claims decisions binding a noticee to findings of fact and conclusions of law arrived at during the noticed litigation." *Bird*, 51 Fed. Cl. at 548 n.14; *compare Oak Forest, Inc. v. United States*, 26 Cl. Ct 1397, 1403-04 (1992), *and RSH*, 20 Cl. Ct. at 7 (each finding that *Martin* applies to RCFC 14(b) notice procedures), *with Rockwell*, 31 Fed. Cl. at 539-40 (holding that *Martin* does not apply to "the special remedial procedures" set forth in 41 U.S.C. § 114(b) and RCFC 14(b)).

This Court believes, however, that it is unnecessary to address the *Martin* issue in the case at bar, because Warren is not in danger of becoming bound by the decision of this Court, as it has not asserted a claim against the United States. *See Rockwell*, 31 Fed. Cl. at 540 (finding that notice was appropriate because the noticee's "ultimate obligation . . . will not be determined in this proceeding nor will [its] rights be precluded."). The Court believes that this ruling is consistent with RCFC 14(b)'s implementing statute, 41 U.S.C. § 114(b), which

states that a noticee will only be bound if it has a claim "*against the United States*." (emphasis added); *see also Del-Rio*, 17 Cl. Ct. at 849 (citation omitted).

The Court's ruling is also consistent with RCFC 14(b), which says nothing about binding a noticee, and only says that the noticee should be "advise[d] of the pendency of the action and of the *opportunity* to seek intervention and to assert an interest in the action." (emphasis added). However, the Court can understand how Warren got the impression that it would be bound by the decision in this case, since Warren received the Court's notice, which tells the noticee the following: "If you fail to appear and assert a claim or interest in the subject matter of the suit, your claim or interest therein will forever be barred." Unfortunately, this notice has been used by the Clerk's Office for many years. Thus, Warren has done the Court a great service by filing its motion, as Warren has caused the notice to be reviewed. As a result, the notice is now in the process of being revised.

Since the Court holds that its rules triumph over the language of the clearly overstated notice, the Court finds that Warren is not in danger of being bound in a future proceeding. Therefore, there is no need to discuss further Due Process implications of Rule 14(b) at this time.

## III. *Conclusion*

Warren's Motion to Quash the Notice to Third Party is hereby DENIED. Thus, it is ORDERED that notice to third party Warren will be deemed effective as of December 11, 2003. As a result, under RCFC 14(c), Warren may, but is not required to, file an answer or complaint, or both, within 42 days of this Order.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge