**Buescher, Brian C.**

**Subject:** FW: Allied v. United States & Warren, U.S. Ct. of Fed. Cl.

From: James.Colt@usdoj.gov [mailto:James.Colt@usdoj.gov]
Sent: Friday, September 30, 2005 2:45 PM
To: Moynihan, Dennis J.
Cc: sstryker@nolanolson.com; Connery, Michael G.; Buescher, Brian C.
Subject: RE: Allied v. United States & Warren, U.S. Ct. of Fed. Cl.

Dennis-

As I explained in my e-mail response to Brian, we have always maintained that there were no other developments of gel throughout turbine units at any other dam sites. Mr. Micetic's testimony, given to illuminate a report in which you expressed interest, indicated that the gel he saw on your Ft. Randall tape was different from issues at other sites. Test results from other dam sites that did not have the same problems as Ft. Randall are not relevant to this litigation. Though we have tried to be accommodating, including making Mr. Micetic available earlier for testimony, discovery does have to have some limits. Accordingly, we must oppose any attempt to draw this case into an examination of unrelated issues at other dam sites and shall oppose your motion.

Best- Jim.

-----Original Message-----
From: Dennis.Moynihan@KutakRock.com
[mailto:Dennis.Moynihan@KutakRock.com]
Sent: Thursday, September 29, 2005 5:24 PM
To: Colt, James (CIV)
Cc: Michael.Connery@KutakRock.com; Brian.Buescher@KutakRock.com; sstryker@nolanolson.com
Subject: RE: Allied v. United States & Warren, U.S. Ct. of Fed. Cl.

Jim,

In our e-mail correspondence regarding the disputed discovery related to other dam sites, you proposed that we wait until Mr. Micetic's deposition "before we throw down the gauntlet and declare that [the Government] will not produce other information and before [Warren] makes demands for such information." Mr. Micetic's deposition took place on August 31st, and the transcript became available while the parties were involved in the midst of a two week block of depositions during the first and second weeks of September.

After having had an opportunity to adequately review Mr. Micetic's deposition, he clearly testified the manifestation of the property damage found in the Chief Joseph Powerhouse was similar to the manifestation of the property damage at Fort Randall (83:10-87:15; 107:6-18; 114:25-115:12; 117:24-118:14). Given the similar manifestation of the property damage between the two sites, Mr. Micetic indicated the underlying cause of the property damage at the two sites may be similar. Given this testimony, justice requires that Warren be able to see the test results of the substance from the Chief Joseph dam site so that those test results can be compared with test results done on the substance from the Fort Randall dam site which will be part of the expert portion of the case.

The issue of being able to have an accurate comparison of the property damage at Fort Randall and Chief Joseph is also made manifest by virtue of the Government's attempt to distinguish the property damage found at Fort Randall from the property damage found at Chief Joseph. On cross examination by the Government, Mr. Micetic indicated he viewed a video of the property damage at Fort Randall and indicated what he saw on the video did not look like the property damage at Chief Joseph. On further questioning by Warren, Mr. Micetic acknowledged that the conditions of the lighting on the video were not very good and he did not go to Fort Randall to personally view the property damage. Thus, Mr. Micetic in essence acknowledges that the video may not have provided an accurate depiction

of the Fort Randall property damage (181:19-182:18; 197:3-198:8). An appropriate comparison of the property damage at Fort Randall and Chief Joseph cannot be accomplished through the review of a poorly lit video. Justice requires allowing Warren to obtain an elemental analysis of the Chief Joseph property damage so that it can be accurately compared to the property damage at Fort Randall.

We have requested, in light of the clear relevance of the Chief Joseph test results, that the Government provide us with a copy of the test results done on the substance from Chief Joseph. This is a very discreet and narrow request that is encompassed by Warren's Request for Production of Documents, and one that is easily accessible to the Government. We respectfully disagree that the Government, in light of Mr. Micetic's testimony, has a good faith basis to refuse to provide Warren with the requested test results.

Since we have reached an impasse on the issue of production of these test results, we are going to file a motion with the court requesting that we be allowed to subpoena the test results from the lab that performed the tests. This subpoena would be for the production of documents, and would likely result in the documents being produced in lieu of having to actually attend a records deposition. We are filing a motion to request permission to serve the subpoena, because compliance with the subpoena would take place after October 3rd. Since the test results of the substance from Chief Joseph would be used by experts, we further believe subpoenaing these test results could be considered part of expert discovery.

Please let us know if you intend to oppose this motion. Thank you for your attention to this matter.

-----Original Message-----
From: James.Colt@usdoj.gov [mailto:James.Colt@usdoj.gov]
Sent: Wednesday, September 28, 2005 4:33 PM
To: Buescher, Brian C.
Cc: sstryker@nolanolson.com; Connery, Michael G.; Moynihan, Dennis J.
Subject: RE: Allied v. United States & Warren, U.S. Ct. of Fed. Cl.

Brian-

As we have discussed, this litigation is about labor costs and lost power generation due to the need to take down turbine units for prolonged periods to remove gel that formed throughout turbine units.
In its Interrogatory Nos. 2-9, for example, Warren Distribution asked whether there were problems "similar" to the problems at Fort Randall.
Our responses to those interrogatories 8 months ago, and our consistent position since that time, has been that no dams have experienced the buildup of gel in turbine units of the same nature, and with the same effect as Fort Randall.

Warren Distribution came across a report written by Mr. Micetic in which he wrote about problems with sludge forming in generator units that were resolved by heating the oil inside the governors. The Government always maintained that these problems with sludge in governors, both in nature, and in resolution, and in areas of the turbine affected, were different from the gel problems throughout the turbine units that had to be taken down. This was our response when other dams were inquired about and it has been our consistent position with regard to the requests for the Government to nominate a 30(b)(6) deponent to discuss issues at other dam sites. We have resisted any attempt to take discovery into an examination of fundamentally different issues at other dams not part of this litigation. And, had we not done so, this litigation would have drifted into completely different matters. After all, your Interogatory No. 9, for example, requested information about "problems of any kind"
at other dam sites.

However, as you noted, the Government has definitely embraced an ethic of working together during discovery and, to serve this goal, we have acceeded to many discovery requests that we felt were unnecessary if the burden was not too great. For this reason, and given that your interest in other dam sites came from Mr. Micetic's report, we suggested that we would make Mr. Micetic available to discuss the nature of his report, the type of the problems involved, and their resolution. This solution was acceptable to you. Mr. Micetic testified that his report was only concerned with a substance that was forming in governor units that could be resolved by heating the governor units. (Micetic Tr. At 23-24, 177).
The gel in the Ft. Randall turbine units also would have persisted at ambient temeratures

far higher than what dissolved the substance that Mr. Micetic described. (Micetic Tr. At 137). We showed Mr. Micetic a tape that you had provided that showed the gel in the turbine units, and he testified that the gel he saw on a tape you provided was different from the sludge that he was writing about in his report. (Micetic Tr. At 182, 211). Mr. Micetic did discuss other tests he had seen. However, these were from dams which he specifically stated, had issues distinct from the Ft. Randall gel problems at issue in this litigation. (Micetic Tr. At 93). If we do not limit this case to problems seen at Ft. Randall and allow this to drift into examinations of oil tests and unrelated issues at different dam sites, this case will literally have no end. That was our position 8 months ago when we responded to your interrogatories and it remains unchanged less than one week prior to the end of discovery. Accordingly, we will not hand over test results run on other oil at other dams related to other issues not part of this litigation.

Very Truly Yours- Jim.

-----Original Message-----
From: Brian.Buescher@KutakRock.com [mailto:Brian.Buescher@KutakRock.com]

Sent: Tuesday, September 27, 2005 3:34 PM
To: Colt, James (CIV)
Cc: sstryker@nolanolson.com; Michael.Connery@KutakRock.com; Dennis.Moynihan@KutakRock.com
Subject: Allied v. United States & Warren, U.S. Ct. of Fed. Cl.

> Jim:
>
> This follows our previous correspondence and discussion with you
> regarding Warren's First Set of Requests for Production of Documents
> and Things Nos. 17-20 and Warren's Notice to Take Deposition Pursuant
> to Rule 30(b)(6) of the Rules of the United States Court of Federal
> Claims Nos. 23-30. Both the document requests and Rule 30(b)(6)
> topics request documents and information relating to other dam site
> locations which had property damage problems subsequent to the
> replacement of turbine lubricating oil, including property damage
> problems similar to those experienced at Fort Randall.
>
> Subsequent to Mr. Micetic's deposition and the other recent
> depositions, it is clear to us that the compatibility testing that Mr.
> Micetic requested for the Bonneville 2 Powerhouse is relevant to this
> litigation. (See Micetic Dep. pp. 95-97). We request that the
> Government provide any results of this compatibility testing as
> responsive to Warren's First Set of Requests for Production of
> Documents Nos. 17-20.
>
> Secondly, Mr. Micetic referenced several tests performed by a company
> called Chemoptix on the oil and the substance found inside the units
> at the Chief Joseph Powerhouse. (See Micetic Dep. pp. 137-138;
> 176-177). We likewise believe these test results are relevant to this

> litigation and should be produced in response to Warren's First Set of

> Requests for Production of Documents and things Nos. 17-20.
>
> During the course of his deposition, Mr. Micetic indicated that he
> believed the property damage problems, and the causes of those
> problems, at Bonneville and Chief Joseph were similar to the alleged
> property damage problems at Fort Randall. In light of Mr. Micetic's
> testimony, we believe the documents requested in Request Nos. 17-20 of

> Warren's First Set of Requests for Production of Documents and Things
> satisfies the relevancy requirement for purposes of discovery, and, as

> mentioned above, both the documents containing information and results

> related to the compatibility testing for Bonneville 2 and the testing
> done on the oil and substance related to the Chief Joseph Powerhouse
> are encompassed within Request Nos. 17-20. Therefore, as stated

> above, we believe Warren is entitled to receive copies of the
> above-mentioned test results, identified by Mr. Micetic, related to
> Bonneville 2 and Chief Joseph Powerhouse.
>
> Please let us know at your earliest convenience whether the Government

> has and is willing to provide the above test results. The parties, in

> large part, have been able to work through various discovery issues in

> a very cooperative manner, and we would hope to do so under these
> circumstances. However, if the Government is unwilling to provide
> these test results, given the fact discovery cutoff of October 3rd,
> then Warren will need to consider taking appropriate action this week
> to address this issue.
>
> We look forward to hearing from you regarding the above documents.
>
> Thanks,
>
> Brian
>
> Brian C. Buescher, Esq.
> Kutak Rock, LLP
> 1650 Farnam Street
> Omaha, NE 68102
> 402-346-6000
> 402-231-8998 (direct)
> www.kutakrock.com
>
>
########################################################################
#####################################
ANY FEDERAL TAX ADVICE CONTAINED IN THIS MESSAGE SHOULD NOT BE USED OR REFERRED TO IN THE PROMOTING, MARKETING OR RECOMMENDING OF ANY ENTITY, INVESTMENT PLAN OR ARRANGEMENT, AND SUCH ADVICE IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY A TAXPAYER FOR THE PURPOSE OF AVOIDING PENALTIES UNDER THE INTERNAL REVENUE CODE.
########################################################################
#####################################
This E-mail message is confidential, intended only for the named recipient(s) above and may contain information that is privileged, attorney work product or otherwise protected by applicable law. If you have received this message in error, please notify the sender at 402-346-6000 and delete this E-mail message.
Thank you.
########################################################################
#####################################