IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ALLIED OIL & SUPPLY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 03-2673C |
| THE UNITED STATES, | ) | |
| | ) | (Judge Damich) |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WARREN DISTRIBUTION, INC., | ) | |
| | ) | |
| Third-Party Defendant | ) | |

# JOINT STATUS REPORT

Pursuant to this Court's May 1, 2006 order, the parties respectfully submit the following Joint Status Report regarding the current points of agreement and disagreement on the protocol for the exchange of oil and substance samples in the above-titled matter.

The Government has identified approximately 8 ounces of subject oil, 2 ounces of the substance, and one filter which was in use during the time-frame at issue in this litigation. Warren Distribution, Inc. ("Warren") has identified the following samples that it believes fall within the Government's request for samples. (Part of the Government's request included the first formulation of the turbine oil after it was removed from the turbine units. Warren believes sample numbers 13, 14 & 15 may be samples of the first formulation of the turbine oil after it was removed from certain turbine units; but, at this time, Warren is not certain that sample numbers 13, 14 & 15 are samples of the first formulation of the turbine oil after it was removed from certain turbine units. Warren is

likewise not certain of the origin of Sample No. 16.)

| SAMPLE NUMBER | DATE | LABEL | APPROX TOTAL AMOUNT |
|---|---|---|---|
| 1 | 10/06/98 | Packaging Sample Oil Bulk ISO 68 Turbine Shift 1 Batch W8932 Julian Date 8279 Allied Bulk | 2.5 oz |
| 2 | 10/5/98 | W8932 Formula #1 Fill Sample | .34 oz |
| 3 | | # 8 Gov Substance | ½ oz |
| 4 | 10/30/98 | Packaging Sample Oil Bulk ISO 68 Turbine Shift 1 Batch W81014 Julian Date 8303 Allied Bulk | 1 oz |
| 5 | 9/15/98 | Packaging Sample Oil Bulk Turbine ISO 68 Shift 1 Batch W8850 Julian Date 8258 Allied Bulk Line 2 | >0.5 oz |
| 6 | 9/15/98 | W8850 Formula #1 Fill Sample | .68 oz |
| 7 | 9/28/98 | Oil Bulk Packaging Sample Iso 68 Turbine shift 1 Batch # W8899 Date 9/28/99 Julian date 8271 Allied Bulk Line #B | 2.5 oz |
| 8 | 9/24/98 | W8899 Formula #1 Fill Sample | .85 oz |
| 9 | 9/15/98 | Oil Bulk Packaging Sample 9/15/98 Shift #1 Batch W8850 Julian Date 8258 Allied Bulk Line #B | 1.5 oz |
| 10 | 10/28/98 | W81014 Formula #1 Fill Sample | .78 oz |
| 11 | | Substance | 2 oz |
| 12 | | Substance | 1 1/2 oz |
| 13 | 6/19/99 | #5 Filter 900 gals 6/19/99 | 26 oz |
| 14 | 9/13/99 | 2nd sample out of # 8 Thrust Bearing 9/13/99 Neal Anderson | 25 oz |
| 15 | 9/13/99 | 1st sample out of # 8 Thrust Bearing 9/13/99 Neil Anderson | 24 oz |
| 16 | None | Filter with #6 Written on it | |

Allied Oil & Supply ("Allied"), has identified samples of five gallons, several quarts,

and 8 ounces which it does not know to be New Oil.

**POSITIONS UPON WHICH THERE IS AGREEMENT**

For those samples that are to be split, the parties have agreed to a protocol for the splitting of these samples. Also, the parties have agreed on a protocol for the information that should accompany samples.

**POSITIONS UPON WHICH THERE IS DISAGREEMENT**

**A. The Government's Position**

The Government position is**,** given that Allied and Warren have decided to rely upon a common expert, all samples should be divided in two equal parts between the Defendant's expert and the common expert of Allied/Warren. Allied and Warren have proposed that the Government may keep one-third (1/3) of each of its identified samples, and the Government will provide two-thirds (2/3) of each of its identified samples to Allied and Warren which comprises one-third (1/3) for Allied and one-third (1/3) for Warren.

In addition, the Government has always supported the idea of a single court-selected expert to render an opinion in this matter. However, the Government believes that any expert should perform his or her own tests. The process of determining which tests shall be run is an interactive process in which an expert often decides to run tests as a result of initial test results. It is therefore essential that experts upon which this Court relies have the freedom to perform their own tests, rather than opining on tests run by

another laboratory. The Government notes that its own expert believes that he can possibly render an opinion using samples one half the size of those available.

Finally, the Government has always maintained that, since the entire purpose of having Warren as a party in this litigation is to allow binding factual determinations to be made regarding the viability of the oil that it provided, there is no reason that oil should be withheld from testing with the expectation of future litigation that might revisit factual findings made by this Court regarding the oil.

**B. Position of Warren and Allied**

Warren proposes to provide the Government 1/3 of each of Sample Nos. 13, 14, and 15. This constitutes approximately 8 ounces of each sample, for a total of approximately 24 ounces. Warren will provide the Government 1/3 of the substance samples referenced in Sample Nos. 11 and 12.

Warren is willing to provide the following samples to a laboratory, to be named and agreed-upon by all parties, to conduct tests as requested by each of the parties' respective experts: Sample Nos. 1, 4, 7, 9.

Warren and Allied request that Sample Nos. 1, 4, 7 & 9 be given to an agreed-upon laboratory for testing for several reasons. Warren and Allied believe if Sample Nos. 1, 4, 7, and 9 were split, an insufficient volume would remain for each party to conduct meaningful tests. If these samples were provided to an agreed-upon laboratory, each of the parties' experts could request the tests that each expert would like the laboratory to conduct on each sample. (Given the amount of the sample available for each of Sample Nos. 1, 4, 7 & 9, the number and type of tests that are feasible will likely have some

limitations even with submission of each sample to an independent lab, but submitting these samples to an independent lab, as opposed to splitting the samples, appears to provide the best means possible for getting the most testing out of these samples.) The laboratory would then conduct the tests requested. The laboratory would then submit separate tests results to each expert. Any sample which remains after the testing is completed would be returned to Warren for use in any possible future litigation between Warren and Allied.

Due to the small quantity available for Sample Nos. 2, 3, 5, 6, 8, and 10, Warren requests that those samples not be tested due to insufficient volume and the need to preserve some sample**,** to the extent any testing can be done with these samples, for any possible future litigation between Warren and Allied.

Warren and Allied are opposed to the Government's suggestion that a single court-appointed expert render an opinion in this matter. Warren and Allied also object to mixing any of the separate samples listed above, especially Sample Nos. 1, 4, 7 & 9. Sample Nos. 1, 4, 7 & 9 each represent separate batches of the first formulation of the subject turbine oil. The only way to trace these batches back to their initial blending is to maintain each of these batches as separate samples.

Warren and Allied request that they each be provided 1/3 of any split samples because they are separate parties in this litigation. Further, issues arising from any potential dispute between Allied and Warren will not necessarily be litigated in the context of this action. Therefore, at the conclusion of this action there may be unresolved issues between Warren and Allied that may be the subject of further litigation. The samples that

are the subject of this Joint Status Report may be relevant to these potential issues between Allied and Warren. Warren and Allied, therefore, respectfully request that the Court take into consideration the possibility of future litigation between Allied and Warren as it determines how the subject samples should be handled.

Respectfully submitted,

PETER D. KEISLER.
Assistant Attorney General

DAVID M. COHEN
Director

s/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

s/ James D. Colt
JAMES D. COLT
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
1100 L. Street, NW
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 305-7562
Fax: (202) 305-7643

Attorneys for Defendant

s/Dennis J. Moynihan by Brian C. Buescher
DENNIS J. MOYNIHAN
KUTAK ROCK, LLP
1650 Farnam Street
Omaha, NE 68102-2186
Attorney for Third-Party Defendant

s/Brian D. Nolan by Susan L. Stryker
BRIAN D. NOLAN
NOLAN, OLSON, HANSEN & LAUGHTENBAUGH
1905 Harney St. Ste. 800
Omaha, NE 68102
Attorney for Plaintiff

June 2, 2006

CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of June, 2006, a copy of the foregoing JOINT STATUS REPORT was filed electronically. I understand that notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Brian C. Buescher