IN THE UNITED STATES COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| ALLIED OIL & SUPPLY, INC.,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant,<br>and<br>WARREN DISTRIBUTION, INC., Third-Party Defendant | No. 03-2673 C<br>Chief Judge Edward J. Damich |

**BRIEF IN SUPPORT OF MOTION TO EXCLUDE WILLIAM HERGUTH AS EXPERT WITNESS FOR THE UNITED STATES AND MOTION FOR PROTECTIVE ORDER**

## I. INTRODUCTION

Defendant Warren Distribution, Inc. ("Warren") seeks to exclude William Herguth as an expert witness for the United States. Additionally, Warren seeks a protective order preventing Mr. Herguth's designation by the United States as a trial expert, or his use as a consulting expert, by the United States in this case.

Mr. Herguth was originally retained by Warren through its non-testifying consulting expert James Fitch during the fall of 2002. Warren has not designated Mr. Fitch to testify in this trial. Mr. Fitch's consulting work for Kutak Rock LLP is non-discoverable trial preparation expert work pursuant to R. 26(b)(4)(B), and otherwise privileged under the attorney-client and work product privileges. In providing consulting services in anticipation of litigation, Mr. Herguth was hired to collaborate with Mr. Fitch in deciding what tests should be run on

various samples given the various defense theories being considered by Warren. Mr. Herguth conducted certain tests on samples of materials at issue in this litigation and has provided his thoughts regarding Warren's case strategy in light of the results of his testing.

The United States indicated when it hired Mr. Herguth, he stated he was not aware of having done any work for Allied or Warren; and, Mr. Herguth stated he was not aware of the above-captioned matter prior to discussions with the Government. Warren has suggested that the United States remind Mr. Herguth of his relationship with Warren prior to bringing this matter to the Court's attention, in order to see if this would cause Mr. Herguth to conclude that he could no longer serve as the United States' expert. The United States indicated that it did not want to address this issue with Mr. Herguth, and the United States further stated that it did not want Warren or its consulting expert communicating with Mr. Herguth regarding this issue. Warren decided to bring this issue to the attention of the Court now in order to prevent further delay of this proceeding due to this issue.

## II. STATEMENT OF FACTS

On or about August 2002, Kutak Rock LLP, counsel for Warren, retained Mr. James Fitch to serve as a consulting expert for Warren Distribution, Inc. ("Warren") related to a claim by the United States arising out of the Fort Randall dam site in the State of South Dakota, and involving Warren and Allied Oil & Supply, Inc. ("Allied"). (Fitch Decl. ¶ 2). At the beginning of Mr. Fitch's engagement, he was advised that the engagement was in anticipation of litigation involving Warren, the United States, and Allied. (Fitch Decl. ¶ 3). The terms of Mr. Fitch's consulting agreement required that all matters related to his engagement with Kutak Rock LLP were to be kept confidential. (Fitch Decl. ¶¶ 2, 3). Mr. Fitch was also advised that all matters related to his engagement with Kutak Rock LLP were privileged and confidential and that Kutak

Rock LLP would be using his services to make decisions regarding the strategy, defense, and other matters related to possible litigation with the United States and/or Allied. (Fitch Decl. ¶ 3).

On or around November, 2002, Mr. Fitch contacted Bill Herguth, of Herguth Laboratories in Vallejo, California. (Fitch Decl. ¶ 4). Mr. Fitch inquired whether Mr. Herguth would be willing to assist Mr. Fitch with his engagement with Kutak Rock LLP. (Fitch Decl. ¶ 4). Mr. Fitch advised Mr. Herguth that he was working for Kutak Rock LLP, which represented Warren. (Fitch Decl. ¶ 4). In conversations and correspondence Mr. Fitch had with Mr. Herguth, Mr. Fitch explained to Mr. Herguth the underlying facts of the case as communicated to him by Kutak Rock LLP. (Fitch Decl. ¶ 4). Mr. Fitch made it clear that Mr. Herguth was expected to keep all correspondence and information related to the case confidential. (Fitch Decl. ¶ 4).

In the course of Mr. Fitch's discussions with Mr. Herguth, he provided Mr. Herguth with confidential information, including, but not necessarily limited to, the following: (1) information regarding the possible defenses Warren was developing that were communicated to Mr. Fitch directly from Kutak Rock LLP; (2) certain facts regarding the litigation that Kutak Rock LLP felt were significant and key to the defense of Warren; (3) specific Kutak Rock LLP impressions as to the case for the Government, Allied, and Warren; (4) questions that Kutak Rock LLP asked Mr. Fitch to address and analyze with respect to the alleged problems with the oil at Fort Randall; and (5) Mr. Fitch's thoughts as to how one would proceed with testing given the various strategies being considered by Kutak Rock LLP. (Fitch Decl. ¶ 5).

Mr. Herguth provided Mr. Fitch advice as to what testing Mr. Herguth thought should be completed in order to answer the questions asked of Mr. Fitch by Kutak Rock LLP. (Fitch Decl. ¶ 6). Mr. Herguth also provided Mr. Fitch recommendations as to a specific strategy of testing.

(Fitch Decl. ¶ 6). Mr. Herguth and his laboratory eventually performed numerous tests on a variety of samples related to this litigation, including some samples which were split and the Government seeks to have Mr. Herguth test again. (Fitch Decl. ¶ 6). Mr. Herguth offered some specific thoughts impacting Warren's case strategy in light of the results of his testing. (Fitch Decl. ¶ 6). Mr. Herguth has been paid for his services, and this cost has been billed to Warren. (Fitch Decl. ¶ 6).

Over the past four years, Mr. Fitch and his office has had numerous instances of contact with Mr. Herguth and/or Herguth laboratories with regard to various issues relating to this case. (Fitch Decl. ¶ 7). Within the last few months, Mr. Fitch's office requested from Herguth Laboratories information regarding samples related to this litigation, some of which are currently retained by Herguth Laboratories. (Fitch Decl. ¶ 7). Mr. Fitch's assistant requested the information pursuant to the specific request of Kutak Rock LLP in order to determine which samples, of those retained by Herguth Laboratories, constituted oil that the Government requested be available for testing. (Fitch Decl. ¶ 7). Kutak Rock LLP used that information to make a direct request to Herguth Laboratories that four samples be returned to Warren. (Moynihan Decl. ¶ 6). Kutak Rock LLP sent an e-mail to Mr. Herguth requesting such samples. (Moynihan Decl. ¶ 6). Herguth Laboratories cooperated and returned directly to Warren the requested samples. (Moynihan Decl. ¶ 6).

## III. ARGUMENT

### A. Mr. Herguth's Prior and Continuing Work as a Consulting Expert for Warren Precludes Him From Serving as a Trial or Consulting Expert for the United States

#### 1. Herguth Switched Sides and Thus Must Be Excluded

In *Wang Laboratories, Inc. v. Toshiba Corp.*, 762 F.Supp. 1246 (E.D. Va. 1991), the Court noted that in a clear case of an expert switching sides, "no one would seriously contend that a court should permit [the] consultant to [continue] to serve as [that] party's expert":

> [N]o one would seriously contend that a court should permit a consultant to serve as one party's expert where it is undisputed that the consultant was previously retained as an expert by the adverse party in the same litigation and had received confidential information from the adverse party pursuant to the earlier retention. This is a clear case for disqualification.

*Id*. at 1248; *see also Koch Refining Co. v. Boudreaux*, 85 F.3d 1178, 1181 (5th Cir. 1996) (citing *Wang*, 762 F.Supp. at 1248); *Marvin Lumber & Cedar Co. v. Norton Co.*, 113 F.R.D. 588, 590 (D. Minn. 1986) (The parties agree "that if [the expert] was indeed engaged as a consulting engineer with plaintiff, on matters relevant to this litigation, at the time it was retained by defendant, that it should be disqualified. The court agrees with that proposition. . . ."); .

Mr. Herguth was retained through Mr. Fitch to consult Kutak Rock LLP regarding this precise case. Mr. Herguth discussed the facts of the case with Mr. Fitch and was provided privileged communications regarding the theories of defense being considered by Warren. Mr. Herguth even provided Mr. Fitch his assessment of certain tests and his thoughts regarding Warren's case strategy in light of those tests. This is a textbook case of side-switching. Warren believes that under the present facts, there is no serious argument that Mr. Herguth should be allowed to act as an expert on behalf of the Government.

**2. Mr. Herguth Must Be Excluded, His Designation By The United States Prevented and His Use As A Consulting Expert By The United States Prevented, Because It Was Reasonable for Kutak Rock LLP to Believe a Confidential Relationship Existed With Mr. Herguth and Because Confidential and Privileged Material Was Provided to Mr. Herguth**

The case of *Marvin Lumber & Cedar Co.*, 113 F.R.D. at 588 is strikingly similar to the present case and illustrates why Mr. Herguth should be precluded from testifying on behalf of the United States in this case. In *Marvin Lumber*, Plaintiff sought "to disqualify Twin Cities Testing (TCT), an independent scientific testing laboratory, from its . . . role as a consulting expert of defendant, and from any role as defendant's expert witness at trial." *Id.* at 589. Plaintiff did so "on grounds of conflict-of-interest, based upon TCT's relationship with plaintiff predating and continuing through the date of retention by defendant in [the] litigation." *Id.*

Plaintiff asserted "that TCT [was] in possession of the confidences and secrets of plaintiff, on subject matter related to [the] litigation, and that the preservation of those confidences requires disqualification." *Id.* "Plaintiff describe[d] the relationship as one involving 'professional advice,' and more than the 'simple reading of a speedometer' for a fee." *Id.* Plaintiff pointed out that "TCT [had] performed tests to determine water infiltration problems [for plaintiff], which [was] a matter at the heart of the litigation." *Id.* at 591.

Defendant "characterize[d] the relationship [between Plaintiff and TCT] as one in which TCT, upon intermittent agreements, would perform standardized, routine industry tests for plaintiff, and report its results." *Id.* at 589. Defendant stressed that TCT "did not render opinions[:]"

> Defendant urges that TCT, during its relation with plaintiff, did not render opinions, provide advice, or consult as professional engineers. It denies that any expert-client relation existed. It emphasizes that TCT has not been retained by plaintiff for this litigation.

*Id.*[1]

TCT "assert[ed] that" the nature of the tasks assigned to it by defendant . . present[ed] no conflict with plaintiff's interests." *Id.* at 591. TCT stated that "it [had] not divulged, and [would] not, any information or knowledge acquired by it during its relationship with plaintiff." *Id.*

The Court found that "a disqualification order was warranted." *Id.* The Court held that "the threat or potential threat that confidences may be disclosed is enough" to justify disqualification:

> To accept either defendant's or TCT's view of the relationship would amount to an artificially narrow view of its essence. Rather than the simple, unthinking performance of unrelated mechanistic tasks urged by defendant, the record supports a longstanding series of interactions, which have more likely than not coalesced to create a basic understanding of plaintiff's modus operandi, patterns of operation, decision-making process and the like. The rules governing disqualification are designed to protect against the potential breach of such confidences, even without any predicate showing of actual breach. That is the case with respect to expert witnesses, just as it is the well-accepted rule with respect to attorney disqualification. The threat or potential threat that confidences may be disclosed is enough.

*Id.*

Other courts have utilized a "two-step inquiry" in determining whether the expert should be excluded. *Wang Laboratories*, 762 F.Supp. at 1248. The "two-step inquiry" is as follows:

> First, was it objectively reasonable for the first party who claims to have retained the consultant . . . to conclude that a confidential relationship existed?
>
> Second, was any confidential or privileged information disclosed by the first party to the consultant?

*Id.*.[2]

---

[1] The court noted that "as a large independent laboratory," TCT conducted standard tests "for a wide variety of clients in a wide variety of industries." *Id.* at 589.

[2] One court has described "confidential" information to include the following:

In *Wang*, 762 F.Supp. at 746, the Court found that it was "indisputable that [plaintiff's counsel] disclosed confidential work product material to [the expert.]" Although there appeared to be no formal engagement letter between the plaintiff's counsel and the expert, the Court found that "the totality of the circumstances point[ed] convincingly to the conclusion that [plaintiff's counsel] was reasonable in assuming the existence of a confidential relationship with [the expert]." *Id.* The Court granted the disqualification motion. *Id*. at 1246.

Following *Wang*, courts around the country have utilized a version of the "two-step inquiry" in deciding to exclude experts where an attorney had a reasonable basis to believe that a confidential relationship existed with the expert and where the expert had been provided confidential or privileged information. *See United States v. NHC Health Care Corp.*, 150 F.Supp.2d 1013, 1015-16 (W.D. Mo. 2001) (Disqualifying expert from serving as expert for the Defendant where the expert formerly worked for the Plaintiff and been exposed to confidential information relating to the case); *Koch*, 85 F.3d at 1182 ("[T]he district court did not . . . err in finding that [Defendant] had a reasonable expectation of confidentiality with [the expert] and that such expectation continued after [the expert] was 'discharged' by [the Defendant]. Their relationship is more aptly described as a 'long-standing series of interactions' than an initial consultation.").

In the present case, Mr. Herguth was (1) retained to provide advice and conduct tests pursuant to a consulting expert engagement; (2) Mr. Herguth was provided confidential and privileged materials and/or communications which clearly reflected the defense strategies and assessments of Kutak Rock LLP; and (3) Mr. Herguth provided Mr. Fitch his thoughts as to

---

> [D]iscussion of the [retaining party's] strategies in the litigation, the kinds of experts [the party] expected to retain, [the party's] views of the strengths and weaknesses of each side, the role of each of the [party's] witnesses to be hired, and anticipated defenses.

*Koch*, 85 F.3d at 1182.

which tests should be conducted and Warren's case strategy in light of those tests. Under *Marvin Lumber*, *Wang*, and numerous other holdings, Mr. Herguth should not be allowed to serve as an expert witness for the Government.

### B. In the Alternative, Mr. Herguth Should Be Immediately Advised of This Conflict of Interest So He Can Ascertain Whether He Believes He Can Continue to Serve as an Expert For The United States

Thus far, the United States has refused to notify Mr. Herguth of this issue. The United States has also requested that Warren refrain from contacting Mr. Herguth regarding this issue.

Warren believes that once Mr. Herguth realizes his mistake, he will immediately take the position he cannot participate in this litigation as an expert witness for the United States. If the Court is not inclined to exclude Mr. Herguth now, and enter a protective order preventing his designation as a trial expert by the United States or his use as a consulting expert by the United States, in this case, the Court should allow Kutak Rock LLP to contact Mr. Herguth, advise him of the above issue, and request that all remaining samples related to this litigation in the possession of the Herguth Laboratories be returned to Warren.

## CONCLUSION

For the foregoing reason, Warren requests that the Court grant its Motion for Protective Order preventing Mr. Herguth from being designated by the United States as a trial expert, and being used as a consulting expert by the United States, in this case; and its Motion to Exclude William Herguth as an expert witness for the United States in this case.

Respectfully submitted this 26th day of July, 2006,

s/Dennis Moynihan by Brian C. Buescher
DENNIS MOYNIHAN
Kutak Rock, LLP
The Omaha Building
1650 Farnam Street
Omaha, NE 68102-2186
Phone: (402) 346-6000
Facsimile: (402) 346-1148
*Counsel for Third-Party Defendant Warren Distribution, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

James D. Colt, Esq.
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Classification Unit
1100 L Street, NW
Room 8032
Washington, D.C. 20530
James.colt@usdoj.gov

Brian D. Nolan, Esq.
Nolan, Olson, Hansen & Lautenbaugh, LLP
The Exchange Building
1905 Harney Street
Suite 800
Omaha, NE 68102
bnolan@nolanolson.com

s/Dennis Moynihan by Brian C. Buescher
DENNIS J. MOYNIHAN